J-S18019-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | |
|---|---|
| IN RE: ESTATE OF DONALD E. MARKELWITZ | : IN THE SUPERIOR COURT OF<br>: PENNSYLVANIA<br>:<br>: |
| APPEAL OF: KELLI HARMAN | :<br>:<br>:<br>:<br>:<br>: |
| | : No. 1738 MDA 2025 |

Appeal from the Order Dated November 13, 2025
In the Court of Common Pleas of York County Orphans' Court at No(s):
6724-2023

BEFORE: DUBOW, J., BECK, J., and BENDER, P.J.E.

MEMORANDUM BY BECK, J.:                 **FILED JULY 20, 2026**

Kelli Harman ("Harman") appeals from the order granting summary judgment in favor of Lisa Marszalek ("Marszalek") and dismissing Harman's petition to set aside the May 23, 2023 Last Will and Testament (the "Will") of their father, Donald E. Markelwitz ("Decedent").[1]  Because the orphans' court did not err by concluding there was no genuine issue of material fact as to Harman's claims that Decedent executed his Will without testamentary capacity or under Marszalek's undue influence, we affirm.

Decedent died at age ninety-one on September 15, 2024.  The Will appointed Marszalek as the personal representative of his estate, named her as the estate's sole beneficiary (except for bequeathing specific property), and

---

[1] Marszalek is Decedent's daughter by birth and Harman is Decedent's daughter through stepparent adoption.

indicated that Decedent intentionally made Marszalek the sole beneficiary of his estate to the exclusion of Harman and another named individual to whom he denied paternity. Marszalek submitted the Will to probate within days of her father's death, and the orphans' court issued letters testamentary to her. On October 23, 2024, Harman filed a petition objecting to the Will, alleging that Decedent lacked testamentary capacity when he signed the Will and/or signed under Marszalek's undue influence. Harman alleged that Decedent did not fully know what he was signing and did not understand the Will presented to him while he was hospitalized. *See* Petition for Citation Sur Appeal from Probate, 10/23/2024, at ¶¶ 13, 18-19.[2] Marszalek responded by filing an answer with new matter. Following a status conference, the orphans' court directed the parties to engage in discovery regarding the allegations of incapacity and undue influence and set an August 29, 2025 deadline. Orphans' Court Order, 1/30/2025, at 1.

Discovery revealed that Decedent signed the Will on May 23, 2023, while he was hospitalized in Harrisburg, Pennsylvania for six days to treat stage four liver failure and heart failure. Marszalek, who had drafted the Will at

---

[2] Harman also averred that shortly before Decedent's death, a representative of the York County Area Agency on Aging (the "Agency") spoke to Decedent, and Decedent claimed that Marszalek wanted to kill him and stole $45,000 from him, and he wanted to void the document he signed in the hospital. Petition for Citation Sur Appeal from Probate, 10/23/2024, ¶ 15. Marszalek appears to have abandoned this contention by failing to include it in her response to Marszalek's motion for summary judgment or in her brief on appeal.

Decedent's request, brought it to the hospital for execution in the presence of a mobile notary. According to a seal affixed to the Will, Notary Public Eric Selvy (the "Notary") notarized the Will. The Notary later signed an affidavit affirming the notarization.

Gary and Donna Wilkins (hereinafter "Gary" and "Donna") signed the Will as witnesses. Gary and Donna are married octogenarians and longtime friends of Decedent who accompanied him to church weekly. They often shared meals afterwards, and Decedent actively participated in discussions in the church's Sunday school class for older congregants. Decedent called them to let them know if he would be attending church; he used a walker and sometimes did not attend if his legs felt weak. Donna and Gary described Decedent as sharp, stubborn, independent, and in charge.

When asked about the signing of the Will at depositions taken in connection with this lawsuit, neither Gary nor Donna could specifically recall observing Decedent sign the Will. However, they recalled that Decedent asked them to come to the hospital to witness the execution of the Will, which they did. Each recalled talking to Decedent in his hospital bed, waiting for the Notary, and signing the Will where indicated, and each authenticated their signatures.

The hospital discharged Decedent the day after he executed the Will. He resumed living alone and did so until his death, with care and assistance from Marszalek.

On September 18, 2025, after discovery closed, Marszalek filed a motion for summary judgment with a supporting memorandum of law, arguing that she was entitled to summary judgment as a matter of law because discovery closed and Harman did not produce any evidence demonstrating that she could meet her burden of establishing testamentary incapacity or undue influence. In support, Marszalek attached to the motion Decedent's various medical records, the deposition testimony of Gary and Donna, the Notary's affidavit, text messages she exchanged with Donna, and text messages between she exchanged with Harman.[3]

On October 20, 2025, Harman filed an answer and brief opposing the motion. Harman admitted that she did not answer Marszalek's formal discovery requests, *see* Answer to Motion for Summary Judgment, 10/20/2025, ¶ 10, and did not attach or identify any additional evidence to her response. In her brief in opposition, Harlan maintained that Marszalek, as the proponent of the Will, did not establish the presumption of testamentary capacity because Donna and Gary could not recall observing

---

[3] Notably, in an exhibit purporting to be an April 2023 text exchange between Marsalek and Harman, Marsalek relayed to Harman discussions she had with Decedent at a doctor appointment regarding her suggestion to create a will, and when she told Decedent that Harman did not like the idea of his creating a trust, Decedent purportedly said he did not understand why Harman was worried because she already stole her inheritance from him. Harman responded with a series of expletives towards Decedent and indicated her plan to contest any will in court. *See* Motion for Summary Judgment, 9/18/2025, at Exhibit I. Harman did not dispute the text messages in her response.

Decedent signing the Will in their depositions. Brief in Opposition, 10/20/2025, § IV(A). Alternatively, if the burden did shift, she maintained that the medical records during his hospitalization speak for themselves regarding Decedent's testimonial incapacity, without identifying a specific place in the medical records supporting her position. *Id.* To establish a confidential relationship for purposes of undue influence, she pointed generally to Marszalek's drafting of the Will, provision of daily care, transportation to medical appointments, and status as his power of attorney. *Id.*, § IV(B). To establish Decedent's weakened intellect, she again generally referred to his hospitalization and Marszalek's comment at his hospital admission that he had been declining for a few days and seemed less sharp. *Id.* Marszalek submitted a reply brief nine days later.

On November 13, 2025, the orphans' court granted the motion for summary judgment, finding that Marszalek was entitled to judgment as a matter of law and Harman had not identified any issue of material fact that warranted proceeding to trial. Orphans' Court Order, 11/13/2025, at 1.

Specifically, the orphans' court determined that the undisputed facts before it indicated that Donna and Gary witnessed Decedent's execution of the Will on May 23, 2023; pursuant to Pennsylvania law, this created a presumption that Decedent had the testamentary capacity to execute the Will, which Harman could overcome only by proving Decedent's incapacity. Opinion Granting Motion for Summary Judgment, 11/13/2025, at 4-9 (citing ***In Re***

- 5 -

*Hastings' Est.*, 387 A.2d 865, 867 (Pa. 1978)).  While acknowledging that Donna and Gary could not recall the exact play-by-play of the execution of the Will two years earlier, the court observed they "testified by deposition that they were called by the Decedent to witness the Will and did so appear and sign," which is consistent with the seal the Notary affixed to the Will and the Notary's affidavit produced by Marszalek affirming that the signatures of Decedent and the witnesses occurred in his presence.  *Id.* at 6-7.  The orphans' court further recognized that because human memories are fallible, the law strongly presumes the validity of a notary's certificate indicating that individuals personally appeared before the notary to sign a document; to overcome this presumption, the opponent must introduce clear and convincing evidence of a certificate's invalidity.  *Id.* at 6 (citing *Butler v. Encyclopedia Brittanica, Inc.*, 41 F.3d 285 (7th Cir. 1994)).  The orphans' court explained that the presumption exists because "'only a rare individual can remember every person with whom the individual has a brief encounter.'"  *Id.* (*quoting Butler*, 41 F.3d at 295).  Similarly, it recognized that under Pennsylvania law, "no man's will should be defeated through the want of memory on the part of the attesting witnesses or on account of their subsequent infamy or insanity."  *Id.* at 7 (citing *In re Rice Estate*, 173 Pa. 298 (1896)).[4]  Because Harman

---

[4]  The orphans' court attributes this quote to the Supreme Court; a similar quote appears not there, but in the orphans' court's opinion affirmed by the Supreme Court.  *See In re Rice's Est.*, 1894 WL 3471, at *1 (Pa. Orph. Ct. Phila. 1894), *aff'd*, 173 Pa. 298 (1896).

exclusively pointed to the gaps in Donna and Gary's recollections when responding to the motion for summary judgment, and these gaps are insufficient as a matter of law to overcome the presumption that the certificate of notarization was valid, the orphans' court presumed that Donna and Gary witnessed Decedent's execution of the Will, which in turn entitled it to presume that Decedent had testamentary capacity to execute the Will. *Id.*

Furthermore, in light of Harlan's general proffer of the hospital records, the orphans' court determined that they created no dispute of material fact, as the records noted that Decedent was alert and oriented to person, place and time throughout his stay, appeared younger than his stated age, and was negative for disorientation and dizziness, among other things. *Id.* at 8-9 (citations omitted). His mere hospitalization and physical condition were not enough, as a matter of law, to establish testamentary incapacity when the record otherwise indicated his mental fitness. *Id.* (citing *In re Hastings Estate*, 387 A.2d at 867). As such, the orphans' court concluded that by not providing any evidence of incapacity, Harlan failed to meet her burden to overcome the presumption of capacity, and with all facts in the record supporting his capacity, there was no basis for a trial. *Id.*

Next, applying the test pertaining to undue influence in *In re Estate of Clark*, 334 A.2d 628 (Pa. 1975), the orphans' court presumed there was no undue influence because Marszelak presented evidence of the formality of probate, which shifted the burden to Harlan to come forward with evidence of

undue influence. ***See id.*** at 10. To shift the burden back to Marszalek to establish evidence to contradict the claim of undue influence, Harlan had to establish that (1) Marszalek was a person in a confidential relationship (2) who received the bulk of property (3) from a testator of weakened intellect. ***Id.*** The parties agreed that Marszalek received the bulk of Decedent's estate but disputed the first and third elements. ***Id.***

The court first found that neither Marszalek's status as Decedent's child nor his power of attorney inherently established a confidential relationship. ***Id.*** at 11-13. The orphans' court found that Marszalek "undoubtedly had a close relationship with Decedent, as she assumed a care-taking role for him and was appointed as his power of attorney." ***Id.*** at 12. Nevertheless, the record did "not indicate such a disparity in position that the inferior party places complete trust in the superior party's advice and seeks no other counsel," given that Decedent was primarily independent and capable of communicating his desires without the assistance of a third party. ***Id.*** at 10-12 (citation omitted).

The orphans' court also found that the record showed that Decedent did not have a weakened intellect prior to his death, pointing to evidence from medical professionals and close friends who observed Decedent to be mentally capable in May 2023. ***Id.*** Specifically, Donna and Gary each testified that they knew the Decedent for at least twenty-five years, he had no problems with mental confusion, forgetfulness, or disorientation, and they never

observed cognitive decline or impairment during their weekly interactions. *Id.* at 10-11. Donna described Decedent as "extremely independent"; Gary referred to Decedent as "sharp" and "in charge" until his death, even calling Gary the night before to let him know he would not be attending church. *Id.* (record citations omitted). The orphans' court found it to be significant that "it was the Decedent who contacted the witnesses and requested that they come to the hospital specifically to witness his new Will," and that Decedent maintained his friendship with Donna and Gary without the assistance of a third party. *Id.* at 11-13. Although Harlan claims that Decedent's physical condition rendered him of weakened intellect, she did not introduce any additional records, and the medical records demonstrate the opposite. *Id.* at 11. It concluded that the records, which are replete with references to his alertness and orientation to his surroundings, "verify the Wilkins' position that Decedent, despite his physical complications, was mentally well at the time of creating the Will." *Id.*

Thus, because the record before the orphans' court demonstrated neither mental impairment nor undue influence, it determined that Harlan failed to proffer evidence to meet her burden and that there was otherwise no

genuine issues of material fact necessitating a trial. It thus granted Maszalek's motion for summary judgment.[5]

Harman appealed, broadly maintaining in her concise statement of errors that the orphans' court erred by granting summary judgment as to lack of testamentary capacity and undue influence without specifically identifying the nature of the errors. Harman's Concise Statement at ¶¶ 1-2; Harman's Brief at 7. Based upon Harman's lack of specificity, the orphans' court declined to address the claims of error beyond the rationale it already had set forth in its November 13, 2025 opinion accompanying its order granting summary judgment. Orphans' Court Opinion, 1/12/2026, at 1.[6]

---

[5] At a pretrial conference on September 23, 2025, the orphans' court scheduled trial for December. On the same day as the conference, Harman, who had obtained new counsel, petitioned for leave to amend her petition to raise the Will's noncompliance with 20 Pa.C.S. § 2501. The orphans' court issued a rule to show cause as to why it should not grant this request, to which Marszalek responded. The orphans' court did not rule upon the petition to amend prior to granting summary judgment; Harman, however, did not raise any claim of error on this basis in her response to the motion for summary judgment or before this Court on appeal.

[6] Marszalek argues that Harman waived all arguments for appeal by filing a vague concise statement that failed to identify the nature of the orphans' court's errors. Marszalek's Brief at 8-9. Rule 1925 requires the appellant to "concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge." Pa.R.A.P. 1925(b)(4)(ii). Failure to comply with this rule by filing a concise statement that is too vague for the orphans' court to identify the claim results in waiver. *Id.* 1925(b)(4)(vii); *Lineberger v. Wyeth*, 894 A.2d 141, 148 (Pa. Super. 2006). However, when the case is "relatively straightforward," such that the claim can be readily apprehended, a vague concise statement is not fatal. *Accord Commonwealth v. Laboy*, 936 A.2d 1058, 1060 (Pa. 2007); *Wells*
*(Footnote Continued Next Page)*

- 10 -

## Legal Standards

We review a grant of summary judgment pursuant to the following standard:

> In reviewing an order granting summary judgment, our scope of review is plenary, and our standard of review is the same as that applied by the trial court. Our Supreme Court has stated the applicable standard of review as follows: An appellate court may reverse the entry of summary judgment only where it finds that the lower court erred in concluding that the matter presented no genuine issue as to any material fact and that it is clear that the moving party was entitled to a judgment as a matter of law. In making this assessment, we review the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. As our inquiry involves solely questions of law, our review is de novo.
>
> Therefore, our responsibility as an appellate court is to determine whether the record either establishes that the material facts are undisputed or contains insufficient evidence of facts to make out a prima facie cause of action, such that there is no issue to be decided by the fact-finder. If there is evidence that would allow a fact-finder to render a verdict in favor of the non-moving party, then summary judgment should be denied.

*Caterpillar Fin. Servs. Corp. v. Get 'Er Done Drilling, Inc.*, 286 A.3d 302, 305-06 (Pa. Super. 2022) (citation omitted); *see also* Pa.R.Civ.P. 1035.2.

The adverse party must file a response and may not rest upon the mere allegations or denials in its pleadings. Pa.R.Civ.P. 1035.3. If the party bears

---

*v. Cendant Mobility Fin. Corp.*, 939 A.2d 343 (Pa. 2007) (per curiam) (applying *Laboy* to vacate this Court's order dismissing appeal on waiver grounds based upon vague concise statement). Because this case is not complex, Harman's appellate issues mirror the arguments Harman presented below, and the orphans' court's opinion accompanying summary judgment analyzed these issues below, we decline to find waiver.

the burden of proof at trial, to defeat a motion for summary judgment, it "must produce evidence of facts demonstrating a genuine issue for trial." **Phillips v. Selig**, 959 A.2d 420, 427 (Pa. Super. 2008); **see also** Pa.R.C.P. No. 1035.2, cmt.

## Testamentary Capacity

Harman argues that the orphans' court erred by shifting the burden to prove testamentary incapacity to her because Gary and Donna were unable to recall certain aspects of the Will's execution, creating a genuine issue of material fact "as to circumstances surrounding the execution of the Will"—i.e., whether there was "proof of execution by two subscribing witnesses." Harman's Brief at 11-12 (quoting **In re Hastings' Est.**, 387 A.2d at 867). She points to the law requiring the orphans' court to view the facts in the light most favorable to her, and particularly emphasizes the witnesses' lack of recollection as to whether Decedent signed the Will in their presence, Donna's failure to remember when the notary notarized the Will, Gary's inability to remember showing his license to the notary, and Gary's memory that he waited fifteen to twenty minutes for the notary to arrive. **Id.** (citing Motion for Summary Judgment, Exs. G & H (Donna's Deposition, 8/21/2025, at 10-12; Gary's Deposition, 8/21/2025, at 8-10)).

**Hastings**' **Estate** provides that

> [a] testatrix possesses testamentary capacity if she knows those who are the natural objects of her bounty, of what her estate consists, and what she desires done with it, even though her memory may have been impaired by age or disease. The burden

- 12 -

of proof as to testamentary capacity initially rests with the proponent of a will. However, a presumption of testamentary capacity arises upon proof of execution by two subscribing witnesses. Thereafter, the burden of proof as to incapacity shifts to the contestant to overcome that presumption.

*In re Hastings' Est.*, 387 A.2d at 867 (citations omitted).

"[P]roof of execution does not require any representation of testamentary capacity by attesting witnesses." *In re Kuzma's Est.*, 408 A.2d 1369, 1371 (Pa. 1979). Under Pennsylvania law, "[p]roof of attestation proves the will, although the witnesses may have forgotten all about the circumstances." *Leckey v. Cunningham*, 56 Pa. 370, 373 (1868) (holding that when subscribing witnesses testified that they subscribed a will at the testator's request, their failure to "recollect that he signed it in their presence" did not invalidate proof of attestation indicating that he did); *see also Commonwealth v. Haines*, 97 Pa. 228, 233 (1881) (when contestant did not provide evidence that conflicted or impaired the notary's attestation, the notary's "absence of memory as to the details of what occurred" did not "destroy th[e] presumption" that the notary "did his full duty" as indicated on the attestation); *McKee v. White*, 50 Pa. 354, 360 (1865) (noting that a witness' failure to recall circumstances of execution is common; without further evidence of invalidity, memory lapse will not disrupt prima facie validity that the instrument was executed per the attestation). Our Supreme Court recognized long ago that a witness' lack of recall regarding the signing of a will "does not detract from the probative force of the fact that they signed,

as a witness, stating at the time the person whose will was witnessed was of sound disposing mind, memory, and understanding," and the attestation "may be used … as substantive proof to establish validity." **In re Lawrence's Est.**, 132 A. 786, 788 (Pa. 1926). The attesting signature establishes "that everything was rightly done unless the act attested be impeached, not negatively merely, but positively." **Kirk v. Carr**, 54 Pa. 285, 290 (1867). Stated another way, to overcome the prima facie establishment of a valid will, the signor must affirmatively testify that he or the testator did not sign the will; the signor's simple failure to recall the specifics regarding the execution after the fact is insufficient as a matter of law. **Id.**

Once the proponent of a will establishes a prima facie case of the testator's capacity, to overcome the presumption of capacity, the contestant must prove incapacity at or near the time of execution by "clear, strong and compelling evidence." **Id.** "Old age, sickness, distress or debility of body neither proves nor raises a presumption of incapacity." **In re Hastings' Est.**, 387 A.2d at 867 (citation omitted).

Upon review of the record in the light most favorable to Harlan, we agree with the orphans' court that Harlan failed to identify any evidence in the record capable of disrupting Marszalek's prima facie establishment of a valid will. Through the notary's seal and affidavit, and Donna and Gary's deposition testimony, Marszalek established that Donna and Gary witnessed Decedent's execution of the Will on May 23, 2026. The production of a Will signed by

Decedent and witnessed by two people entitled the orphans' court to presume that Decedent had testamentary capacity to execute the Will. *Id.* The burden of proof then shifted to Harman to overcome this presumption. *Id.* To rebut Marszalek's prima facie case, Harlan exclusively relied upon Donna and Gary's deposition testimony. Donna and Gary did not deny signing the Will or claim that Decedent did not sign the Will. Even giving Harlan the benefit of all inferences, the deposition testimony related exclusively to Donna and Gary's failure to recollect details of the procedure and Decedent's signing of the Will in their presence. By law, this evidence is insufficient to undermine the presumption that the Will is valid and was executed per the Notary's attestation and affidavit. *See Leckie*, 56 Pa. at 373; *Haines*, 97 Pa. at 233; *McKee*, 50 Pa. at 360; *In re Lawrence's Est.,* 132 A. at 788; *Kirk*, 54 Pa. at 290. Furthermore, Harlan's general proffer of the medical records was insufficient as a matter of law to overcome the prima facie case of Decedent's testamentary incapacity. *See In re Hastings' Est.*, 387 A.2d at 867. Again, viewed in the light most favorable to Harlan, the records simply establish that Decedent was physically ill but not mentally impaired.

Because the orphans' court presumed the certificate was valid and Harman failed to produce any evidence to defeat this presumption, Marszalek established a prima facie case of testamentary capacity. Because Harman failed proffer any evidence capable of rebutting this presumption as a matter of law and did not establish any disputed material fact, the orphans' court did

not err by granting summary judgment in favor of Marszalek regarding Harman's challenge to the Will based upon testamentary capacity.

**Undue Influence**

In her second issue, Harlan argues that the orphans' court erred by granting Marszalek's motion for summary judgment because a "genuine issue of material fact exists as to her claim for undue influence." Harlan's Brief at 13-16. According to Harlan, the evidence establishes that Decedent executed the Will under the undue influence of Marszalek, who drafted the Will and was the sole beneficiary. *Id.* Harlan contends the combination of facts establish a confidential relationship between Marszalek and Decedent: she was his daughter, his power of attorney, and his provider of daily in-home care and transportation to Decedent in his old age and weakened health. *Id.* at 13-15.

As for Decedent's weakened intellect, Harlan points to his admission to the hospital for five days prior to signing the Will, Marszalek's statements to hospital staff at the time of admission that Decedent had been "declining over the past few days" and "seem[ed] a little bit less sharp," Decedent's age, and his numerous health issues, including difficulty with vision, cirrhosis of the liver, and heart disease. *Id.* at 15 (citation omitted). According to Harlan, Marszalek clearly had influence over the "gradual, progressive inculcation of a receptive mind," given her drafting of the Will, her status as the sole beneficiary, her intimate knowledge of Decedent, his dependency upon her,

her provision of in-home care, and her transportation and accompaniment to his medical appointments. *Id.* at 15-16.

When considering whether undue influence is present, courts should bear in mind that the

> word "influence" does not refer to any and every line of conduct capable of disposing in one's favor a fully and self-directing mind, but to control acquired over another that virtually destroys his free agency. In order to constitute undue influence sufficient to void a will, there must be imprisonment of the body or mind, fraud, or threats, or misrepresentations, or circumvention, or inordinate flattery or physical or moral coercion, to such a degree as to prejudice the mind of the testator, to destroy his free agency and to operate as a present restraint upon him in the making of a will.

*In re Est. of Smaling*, 80 A.3d 485, 497 (Pa. Super. 2013) (en banc) (quoting *In re Ziel's Est.*, 359 A.2d 728, 733 (Pa. 1976)) (cleaned up).

"The resolution of a question as to the existence of undue influence is inextricably linked to the assignment of the burden of proof." *In re Estate of Clark*, 334 A.2d 628, 632 (Pa. 1975). This Court has explained *Clark*'s standards for shifting the burden as follows:

> Once the proponent of the will in question establishes the proper execution of the will, a presumption of lack of undue influence arises; thereafter, the risk of non-persuasion and the burden of coming forward with evidence of undue influence shift to the contestant. The contestant must then establish, by clear and convincing evidence, a prima facie showing of undue influence by demonstrating that: (1) the testator suffered from a weakened intellect; (2) the testator was in a confidential relationship with the proponent of the will; and (3) the proponent received a substantial benefit from the will in question. Once the contestant has established each prong of this tripartite test, the burden shifts again to the proponent to produce clear and convincing evidence which affirmatively demonstrates the absence of undue influence.

- 17 -

*In re Est. of Smaling*, 80 A.3d at 493 (footnote and citations omitted).

A "weakened mentality" for purposes of undue influence "need not amount to testamentary incapacity." *In re Clark's Est.*, 334 A.2d at 634. Evidence may be more remote than just at the moment of execution; generally, a person accomplishes undue influence "by a gradual, progressive inculcation of a receptive mind," meaning that the "'fruits' of the undue influence may not appear until long after the weakened intellect has been played upon." *Id.* There is no bright-line legal test for establishing weakened intellect, but it is "typically accompanied by persistent confusion, forgetfulness and disorientation." *In re Est. of Byerley*, 284 A.3d 1225, 1237-38 (Pa. Super. 2022) (citation omitted). The mere fact that a testator is elderly or suffers from physical ailments or illnesses is insufficient proof of a weakened mental intellect. *In re Est. of Luongo*, 823 A.2d 942, 966-67 (Pa. Super. 2003).

The "essence" of a confidential relationship "is trust and reliance on one side, and a corresponding opportunity to abuse that trust for personal gain on the other." *Owens v. Mazzei*, 847 A.2d 700, 709-10 (Pa. Super. 2004) (citation omitted). A finding of a confidential relationship is warranted "when the circumstances make it certain the parties do not deal on equal terms, but, on the one side there is an overmastering influence, or, on the other, weakness, dependence or trust, justifiably reposed." *Id.* (citation omitted). "A parent-child relationship does not establish the existence of a confidential

relationship nor does the fact that the proponent has a power of attorney where the decedent wanted the proponent to act as attorney-in-fact." *In re Est. of Luongo*, 823 A.2d at 964 (citation omitted); *In re Est. of Angle*, 777 A.2d 114, 125 (Pa. Super. 2001).

Upon review, we agree with the orphans' court conclusion that there is no dispute of material fact regarding Harlan's undue influence claim and that she failed to meet her burden of establishing either of the contested elements to shift the burden of proof back to Marszalek.

Harlan continues to equate Decedent's physical health conditions to his state of mind despite abundant evidence of record that Decedent's mental faculties remained intact and without pointing to evidence to the contrary. The bare allegation that Decedent was sick and hospitalized is insufficient evidence of weakened mental intellect. *See In re Est. of Luongo*, 823 A.2d at 966-67. Even when the record is viewed in the light most favorable to Harlan, the sole evidence that Harlan points regarding mental capabilities— Marszalek's singular comment that Decedent seemed a little bit less sharp— does not create a disputed material fact given its relative nature.

Likewise, as a matter of law, the mere fact that Marszalek possessed power of attorney or that she was Decedent's child was insufficient to establish a confidential relationship for purposes of undue influence. *See id.* at 964. Harlan did not identify any evidence concerning the circumstances under which Marszalek acquired the power of attorney or showed that she abused

the power. *See In re Est. of Angle*, 777 A.2d at 124 (holding that orphans'

court did not misapply the law by declining to shift the burden of proof

regarding undue influence over father/testator suffering from Alzheimer's

disease when, inter alia, the testator's non-inheriting children introduced no

evidence showing that inheriting son abused his power of attorney or

dominated or manipulated the testator). Even when viewed in the light most

favorable to Harlan, the facts regarding the closeness of Marszalek and

Decedent and the assistance she provided him were insufficient to establish a

prima facie case of undue influence, as Harlan has not identified any facts

indicating that Marszalek acquired the type of control over Decedent that

virtually destroyed his free agency or any "evidence of imprisonment of the

body or mind, threats, fraud, misrepresentations, or any of the conduct

necessary to establish the existence of undue influence." *See In re Est. of*

*Smaling*, 80 A.3d at 497; *In re Est. of Angle*, 777 A.2d at 124. To the

contrary, the record shows that Decedent initiated contact with Donna and

Gary to request that they witness the Will and that Decedent interacted

regularly with his friends without Marszalek's involvement. *Cf. In re Est. of*

*Bankovich*, 496 A.2d 1227, 1229 (Pa. Super. 1985) (affirming orphans'

court's finding of undue influence because parent, who was experiencing

"progressive loss of intellect and awareness," became "wholly dependent" for

"maintenance and care" upon her sons who "assumed total control over her

every day affairs, acted as her spokesmen, made decisions for her, and discouraged social intercourse with her daughters").

Because Marszalek was Decedent's daughter, her active participation "in the preparation and execution of the will does not of itself place upon [her] the burden of proof, as it would in case of a stranger." ***In re White's Est.***, 105 A.549, 551 (Pa. 1918).  Notably, given that Decedent executed the Will a year and a half prior to his death, he had ample opportunity to change it but did not.  ***See id.***  Simply put, Harlan bore the burden of proving undue influence, and she failed to proffer any evidence capable of supporting her allegations of weakened intellect and a confidential relationship such that Decedent was no longer a free agent and subject to Marszalek's over-mastering influence.  Nor did she establish a disputed material fact with the evidence in the record.

Because Harlan had the burden of establishing a prima facie case of undue influence and failed to do so, the trial court did not err by granting summary judgment as a matter of law.

## Conclusion

Because the record clearly demonstrates that Harlan failed to introduce evidence necessary to sustain her burden of proof at trial, and there is no genuine issue of material fact as to a necessary element of the cause of action, Marszalek was entitled to judgment as a matter of law and the trial court did not err in granting summary judgment in her favor.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 07/20/2026